Mr. Lavery and Mr. Sheehan. Yes, Your Honor. I am Martin Sheehan. Your Honor, we are dividing the argument in three fives. I'm reserving five minutes for rebuttal. Okay. I am counsel for the amicus, the National Association of Bankruptcy Trustees, and I intend to kind of focus on some bankruptcy issues. I practice as a bankruptcy trustee, so I'll be happy to confound you with maybe another impenetrable statute. Okay. After that last case, it won't take much to confound me. How do we get to the Barton issue to begin with? I would presume that that's why you're here. Well, the Barton issue is of huge concern to our group, Judge. The Barton issue arises in this case because ultimately there had to be some request to sue in this particular case. The decision that Judge Thomas made was that he was not going to reach the Barton issue. He thought that you could, in fact, bring a suit directly against Mr. Schwab. We think that's an error. And the key aspect of the ruling that he made was he said he did not know whether the suit was against the estate or the suit was against Mr. Schwab personally. And so it is because of our interest in the estate and the liability issues that pertain to trustees that I think caused the Barton issue to be at least on our radar in this particular case. Even though he said he wasn't going to get to the Barton issue, he then got to the Barton issue, didn't he? Well, he really did, Judge. And so, I mean, Judge Thomas has taken a view in a different case, the Lambert case, where he's expressed a view that the Barton doctrine is sort of dead as far as he's concerned. And that's an issue with which we take some – we disagree strongly. The Barton doctrine does have two components on a historical basis. One, it does talk about the court that appoints the receiver, and there is some logic to that. We do think that it is understandable why Judge Thomas got focused on that. Congress changed that scheme in the 70s and fully changed it in the mid-80s. The real difficulty, however, is that when you look at Barton again, it talks about that it's there to protect the assets of the estate. And we think that that fundamental purpose behind the Barton doctrine remains. And it is, in fact, a decision about where we're going to do the primary wrap-up of a bankruptcy estate. And so – What about – I guess this is McNultyn, the other ancient case from the Supreme Court. In the modern context, is an action against the trustee personally still one that would be satisfied out of the estate? There are two points of view, Judge. If the estate's the true defendant because you're going against the estate for responsibilities of the estate itself, then the estate would pay. It is possible for a trustee to make a mistake. I am a successor trustee in a bankruptcy case. I'm going to sue my predecessor for having distributed money incorrectly. Kind of a malpractice action. Well, and I'm going to do it in bankruptcy court, so the Barton issue is kind of different, but that's where we are. So it's a matter of personal breach of fiduciary duty to the estate, breach of duties of loyalty, those kinds of things. And so there is some theoretical liability against an individual trustee. We don't see that Mr. Schwab has done that. In contrast, what we think he did was that he went to court, got permission to do certain things, got derived judicial immunity, acted faithfully against the estate, gave notice to CGL, and did all of those kinds of things. The bankruptcy trustee is responsible for cleaning up messes, Judge. When title problems arise and are somewhat intractable, when there are lien issues that are intractable, ultimately those issues get dumped in the bankruptcy court. We sell free and clear of liens, kind of ignore the history. We make some deals. We do some things. We litigate them if we have to. But very often we make a lot of deals in the hall. And so we try and get that moving along in order to be efficient administrators of the system. We recycle property, and that's what Bill Schwab did in this particular case. He needed to get out from under what was a bad economic plan for the property. He did so. He did so with notice to the purchaser here. And that's not disputed, is it? No, it really isn't. And so we're a little confounded by the presence of this particular case at all. But we wanted to emphasize that the doctrine still arises for us, still functions for us. I know this court can overrule a prior panel. The bankruptcy appellate panel in the Kashimi case in the Ninth Circuit has articulated a little bit more about how they think the Barton Doctrine works and when you're exercising discretion, how that functions. You can look at the derived judicial immunity doctrine. You can look at the race judicata issues. You can look at where a case ought to proceed. And those are the things that we think are crucial. But doesn't the absolute immunity analysis forego much of this? You don't need it, you mean? Right. It's superfluous. If the trustee as an officer of the court has absolute immunity. Well, we have derived judicial immunity only when we act in accordance with the court order. Okay. Okay. I'll be back to answer your questions. Okay. You said that like it was a threat, Mr. Sheehan. It was not a threat, though. Okay. When you're a bankruptcy lawyer, maybe to make deals in the hall, you've got to be a little assertive. Was the time allocation correct? On my paper, it says that the 10 minutes. For me, it says 10 minutes. I believe it was five. Five, five, and then five for rebuttal. Okay. So I just want to briefly address some of the issues, assuming that the Barton Doctrine does apply, which my learned colleague argued. And really specifically, he hit the one nail on the head. I mean, when these lots were sold, they were sold with notice. Of the sale and removal of restriction one. Now, what they're saying here is, look, we didn't have to go into court and object because this restriction was in place and we're an intended beneficiary of this restriction and this subdivision plan, which, again, we disagree with. Because if you look at the facts of the case, they themselves initially when what happened here is, initially the property was, there was 45 lots. One lot there is an assisted living facility on it. The other 44 were the mobile homes are located. What happened here initially, the trustee got permission from the court to sell it in two lots. He was able to sell the lot where the assisted living facility was located to the plaintiff in this case. At that point, the plaintiff specifically wanted this restriction removed, the supposed offending restriction. And that states that fee title to lot shown shall not be transferred to the parties having the residence as constructed upon said lot's title will remain in the developer, its heirs and assigns. They could have bought the whole thing at that point. If they wanted that to remain, they could have bought the whole thing. But they didn't. And what's clear here is they bought the one lot. And at that point, they were very insistent that they wanted this restriction removed. And it was removed on their own motion. Now they're saying, oh, no, we're an intended beneficiary because it's not supposed to be removed with these other lots. The problem with that was they knew full well, and the testimony, I believe, was pretty well undisputed at the hearing before Judge Thomas, that they knew that Mr. Schwab as a trustee was in negotiation with the township to remove that particular restriction. In fact, there was testimony by Mr. Schwab, and all this was unrebutted at the time, that they said they knew that. And by the way, if you can't do it, come back to us. We might be interested in purchasing it. So it's clear that everything that Mr. Schwab did here was with the approval of the court. And every one of these individual sales was pursuant to an order that Judge Thomas signed. They knew about it. They had notice about it. They could have come into court to challenge it, and they didn't. At this point, you've got a lot of buyer's remorse, Your Honor. And that's basically what happened here. They couldn't get the financing. Now, all of a sudden, it's Mr. Schwab's fault, the person, again, who in these economic times has to recycle the property. So our argument is pretty basic, and that is if Barton applies, which we clearly believe it does, leave to bring this action against Mr. Schwab was improvidently granted by the bankruptcy judge and then by Judge Munley, and that this Court should reverse that. Thank you very much. That's all I bring. Good morning. I'm Barry Sawtelle, and I represent CGL, the appellee in this case. I am less concerned about the Barton issue than the substance of whether or not Judge Thomas was correct in granting my client permission to sue Mr. Schwab in State court and whether Judge Munley was correct. Well, you were shaking your head no when the notice discussion came up, but I thought it was uncontested that you knew about the proposed sale and you knew about the proposal to remove Restriction 1. No, because here's what happened. There was, when Mr. Schwab filed a motion to sell Lot 45 to my client, he disclosed to the court that there was this restriction in the subdivision plan and obtained an opinion of the municipal solicitor that because Lot 45 had never had a residence on it, what we have is sort of a poor man's retirement community where we had a building that was an assisted living center, and then we had 44 essentially mobile home lots surrounding it, and the deed restriction or the subdivision restriction said that the residential lots shall all be held in a single owner, and the township solicitor said Lot 45, the residential facility, was never a residence, and therefore that restriction doesn't apply to that lot, and that's what permitted Mr. Schwab to sell that property to my client. And the court specifically in its order said this sale is free and clear of the Restriction 1 in the subdivision plan because part of the information that was provided was this opinion of counsel. When Mr. Schwab came back around to selling the other 44 lots, he specifically failed to make any mention of Restriction 1, and when Judge Thomas approved the sales, he approved them under Section 363, free and clear of liens and encumbrances, but nothing in either the motion or the order said, oh, and by the way, they're free and clear of Restriction 1. So what my client sees, even if he got notice, and there are questions that you'll see in the colloquy. Why wouldn't Restriction 1 be an encumbrance? I'm sorry? Why wouldn't Restriction 1 be an encumbrance? Because it is an encumbrance under the bankruptcy law is a lien. It's not a municipal planning device under State law. That's not the kind of encumbrance. If Mr. Schwab, if this was a single unsubdivided piece of land and Mr. Schwab decided that he had permission to sell it and decided on his own without going through subdivision process to whack it up into 44 lots, he couldn't do that under Pennsylvania law, and this is the same thing. So what my client saw was, okay, he's got permission to sell them. Now we go to, he's any other landowner under Pennsylvania law selling these properties, and he's got to follow the Pennsylvania procedure. Now, he followed a procedure, but he followed the wrong one. Basically, he and the township solicitor cut a deal, and they recorded this declaration. Under Pennsylvania law, what you have to do is go to the trial court, to a court of equity, and ask that, based on change of circumstances in the neighborhood or other factors, to be relieved of that restriction, and that's the point at which CGL would be in a position to say, in a court of, with knowledge of the facts, this is why this should be restricted or this shouldn't be restricted. So Judge Thomas never granted Mr. Schwab relief from restriction number one, and that's why his actions weren't authorized, and that's why he doesn't get immunity. What we presented to Judge Thomas was what we're required to do under the Barton Doctrine, which is to show that we've got a prima facie case. What I presented at that time was that we have a recorded restriction on the alienation of property adopted under the Pennsylvania Municipalities Planning Code. We have a party who is the beneficiary of that, because my client is part of the subdivision. They are a beneficiary of that restriction, and we have a violation. The properties were sold without any compliance with that, which says you've got to have a single owner. That makes the prima facie case, and Judge Thomas said this isn't even close. This is clearly a ---- So they're representing that your client at one time wanted the restriction moved. No. My client wanted to buy lot 45, and in order to get good title to it and in order to comply with or in order to resolve questions, in order to get good title and resolve questions about the meaning of this restriction number one, my client said to Mr. Schwab, you've got to get that fixed. And so ---- I'm saying removed, you're saying fixed. But to get good title, it sounds to me like you're saying in order to get good title, he had to have restriction one removed. No. What he got was an opinion of the township solicitor that restriction number one was never intended to apply to lot 45. So the question ---- Wasn't that removing restriction one from lot 45? No, because if it never applied, there's nothing to remove. And what the solicitor said, it only ---- Absent that opinion from the solicitor, though, you've got restriction on lot 45. With the opinion from the solicitor, which your client apparently sought, you don't have restriction. Now, you can say it was never removed because it was never there, but it was there until something came along to allow you to make the argument that it was never removed because it was never there. Well, no. The language appears on the subdivision plan. Lots upon which residences are constructed or maintained shall be held in a single owner and the fees shall not be transferred. And what was ambiguous is what it was. And so we cleared up the ambiguity by having the township solicitor say that was never meant to require that lot 45 and all the other lots be in a single owner. And that resolved the issue for my client's title insurance company and allowed the process to go through. And also, everybody else who might have been interested got notice because the motion and the order specifically said I am finding that restriction number one does not encumber or does not restrict the sale of this property. And that never happened with the other ones. So we established a prima facie. What never happened? Your client didn't receive notice? There was never an inclusion in either the authorization to sell arose in two different contexts. For the most part, Mr. Schwab filed adversary proceedings against all of the property owners and then entered into settlement stipulations that basically said they would buy the lots. And then he got those stipulations approved by the bankruptcy court. There were a handful of them where he actually filed a section 363 free and clear motion. But didn't you get notice of those? Yes, but they did not say the relief that we're asking for is elimination of restriction number one. But you knew if they were sold to the owners that they would have been violative of the restriction? Well, there was another step to go through, though. Yeah, but you knew that. Yes, and we're happy to address whether or not. Does anyone else hear that? Yes. Good. Okay. Go ahead. I just wanted to make sure. I thought my time was up, but I'm not there yet. The process required two steps. And all that Mr. Schwab got from Dutch Commerce was permission to sell those lots in compliance with Pennsylvania law. He had to, if he was going to sell the lots, he had to pay the applicable wielding transfer tax on those lots. He wasn't absolved from that responsibility. He had to produce deeds that conformed to Pennsylvania law. And he had to comply with the land development restrictions that were in place on the property. He could only sell the 44 lots that were already subdivided. He couldn't divide those up into more lots or combine them. That would require approval. And that's the stage at which my client would have been entitled to defend his rights in Lancaster County, in a court of equity in Lancaster County. And that's what never happened. And that's why Mr. Schwab was never authorized. And that's exactly what Judge Thomas found. You're saying it never happened, but my question was, you knew that the identity of the purchasers were the people who were living on the lots, and the sale to them violated the restriction. Now, what more notice did you need? We needed a proceeding where that issue was before the court. That issue was never before the court. Well, you could have brought it before the court by objecting that the sale is improper under the restriction to these individuals. I don't believe so. I think that the — Well, the court may have disagreed with you, but you could have brought it before the court. Could have done a lot of things, but we didn't. We weren't required to do that because that issue was not before the court. And there is a process that Mr. Schwab could have gone through in order to do this. But all he was asking for from the bankruptcy court was the right to sell these — Yeah, but it's hard for you to say you didn't have notice. Yeah. You could have done something different, but it's hard for you to say that you didn't have notice. We did not have the opportunity to — well, I'll say two things. We did not have the opportunity because the issue of restriction number one was not before the bankruptcy court. And that, of course, begs the question whether the bankruptcy judge even has the authority to absolve that. I would say that he doesn't, but — The issue is only notice. That's the only thing we're talking about. You know, the question as to whether or not you can proceed in state court is whether or not your claim is without foundation. That's really what the issue is before us. Yes. And we have laid out the essential and supported with evidence the essential elements of the claim, which is that there's a restriction, there was a beneficiary who was aggrieved by that, and it was a sale or it was a violation of the restriction. And that's all we have to show, and that's what Judge Thomas says, and that's what Judge Munley said, that that's the basis upon which we have to — that's what we have to establish in order to go forward. Yeah, but isn't the court going to say, isn't the state court going to say when they look at this, well, wait a minute, you had a chance to object to this when the property was sold. We're not going to hear this at this late date. And doesn't that go to the question of whether or not your claim is one without foundation? I don't think it's appropriate for the prospective plaintiff to have to decide at the stage in the proceedings where we're asking for permission to flesh out and litigate the entire case and anticipate all the defenses and rebut all the defenses. If that were the rule, then we'd have to try the whole case in order to get the right to try the whole case. Well, the only issue is whether or not you could have raised an objection to the sale of the lots. I mean, I wouldn't elevate it to the level that you're trying to elevate it to. The issue is whether or not you knew that this was being done, and there was clearly something you could have done about it. Well, I would say also, I think there's a couple things at this point. There's nothing in the case law that requires a prospective plaintiff to rebut all of the defenses, and essentially what we have here is an affirmative defense. But there may be consequences of not doing that. If you want to look at it through that lens, and I'm not sure that's accurate, but looking at it through that lens, even though the law wouldn't require you to protect your rights, there may be consequences for not acting reasonably to protect your rights once you know that this action is going forward with regard to the property. But, one, the issue wasn't ripe because the issue was not before Judge Thomas. Nobody had asked Judge Thomas to deal with restriction number one, when the sale of the 44 lots came before him. And, two, there's another forum where that. But how could he sell the 44? With that restriction in place, how could he allow the sale to go forward? Because what is the person going to buy? Well, what he allowed them to do is, say, from a bankruptcy standpoint, from the position of how do you deal with the mortgage holder who has a lien on this property. From that standpoint, we're going to take those impediments to your sale of these properties off the table by the way 363 works, the proceeds of the sale, the lien of the mortgage attaches to the proceeds of the sale, and we're taking care of that. So I'm doing as much, Judge Thomas, I'm doing as much as I can do as a bankruptcy judge to facilitate your ability to sell these lots by dealing with the mortgage. If there were municipal, I don't know what other encumbrances there were on the property, but I'm going to take care of those things. Now you've got the ability as the bankruptcy trustee to sell these lots. Now you can go to state court, and if you can clear your hurdles in state court, particularly getting rid of restriction number one in state court, then you can sell the lots. I've done what I can do. Now you've got to go to step two, which is to take it into state court and get relief under Pennsylvania law, and that's what he didn't do. There was no objection to, on the part of my client, to, or I don't have a basis to say, Judge, you don't have the authority under section 363 to authorize the sale of this free and clear of liens and encumbrances because he does. And there was another place to address the land development issue, the restrictive covenant issue, and that was in state court, and that's what we intended to do. And raising extraneous issues in the bankruptcy court when we weren't noticed that that was the issue the court was adjudicating is not the standard that my client has to meet in order to go forward. Let me ask you this. So if Barton applies and Mr. Schwab is immune, does that forego the continuation of the lawsuit in state court? Well, I would say if he's immune, then yes, we can't proceed. But I would say two things about the immunity issue. The first is that the immunity issue was never raised in front of Judge Thomas, and therefore for the purpose of this case in front of this court, that issue is waived. You can't flip on Judge Thomas. Can you waive that? Is that something you can waive? Sure. If there's a doctrine out there that says that you don't have the authority to sue X without court approval and you don't pursue that, does that give the court authority to do something that the law says the court cannot do? Well, no, because if you look at the language in Kashimi is the best articulation of this, and that says that the bankruptcy judge should go through a sequential analysis to balance the rights of the parties, and one of the things he should consider is whether there's some kind of collateral estoppel issue. One of the issues that he should consider is whether the bankruptcy court has the expertise to consider this issue or whether a state court does. And one of the issues he could consider is the immunity question. And these are some of many factors that the judge has to balance in order to decide whether or not a case should go forward. They didn't raise the immunity issue. Now, I think even if they had, Judge Thomas, there's enough on the record to clearly indicate that he would not have found there was immunity. You get immunity really in two circumstances. One, the trustee is doing something that only a bankruptcy trustee can do, something in the adjudicatory function of the bankruptcy proceeding, and that's not the case here. He's selling land just like anybody else could sell land. The other circumstance where you get immunity is when the specific action you undertake was authorized by the court, and that's the discussion we've been having for the last 15 minutes. The action he took, selling those properties in violation of restriction number one, was never authorized by Judge Thomas. So even if they're entitled to raise the immunity issue, and I don't think they are, it doesn't get them anywhere anyway because under the facts that were laid out at the hearing before Judge Thomas, there is no immunity. We have – these are issues that – I think it's just a procedural question. The burden is – I mean, the standard for the prospective plaintiff is relatively truncated because we're at a very early stage in the proceedings. This is essentially the pleading stage. This is a demeurer stage or a 12B6 stage where the only test is can the plaintiff articulate a cause of action that if everything's true, he can prevail on. It doesn't get into are there defenses, are there other issues, because we don't have the opportunity to pursue all of that. There is a lot of stuff that came out at that hearing that's factually wrong, but we didn't have the opportunity to do discovery before that. We didn't have the opportunity to have all the documents. We were able to say, look, here are the essential elements of our claim, and here is the evidence to support that, and on that basis, we should be allowed to go forward. Well, you lay it down, but before I say that, maybe you could address 959A. We almost have a situation here where you're not contesting what is part of the main interest, really Mr. Sheen's main interest, and institutionally, it's the most important part of this case for our purposes, and that is whether or not the Barton Doctrine still applies. And looking at 959A, it doesn't seem pretty clear that Congress has recognized the doctrine, and even though the initial foundation of the doctrine may no longer be there, Congress recognized the Barton Doctrine in actually 959A, and how would this Supreme Court, this lower court, be in a position to ignore Congress's recognition of a Supreme Court doctrine, even though the underlying underpinnings, the factual underpinnings of that doctrine, have gone by the boards because of the changes in the bankruptcy law? I think that if they were going to adopt the Barton Doctrine or codify the procedures of the Barton Doctrine, they would have done it in 323 where it says a trustee may sue and be sued. But 323 only applies to the title that it's a part of. It doesn't apply to 7 and 11. It says actions under this title. Under Title 11. And we're under 7 now, aren't we? Well, when it says this title, it means 11 U.S. codes, so it's the entirety of the bankruptcy code. It's not just a Chapter 7 or a Chapter 11 or a Chapter 13. When the code says title, the code means the entirety of the 78 Bankruptcy Act, or the bankruptcy code. So 323 is a general provision that covers the 300s cover all kinds of cases, and in 323 it simply says the trustee can sue and the trustee can be sued, and if Congress wanted there to be some predicate to that, that you have to make some kind of a showing in order to sue a trustee, that's the place to put it, and there's nothing there. That's not, it's a really interesting academic question. It's not the primary focus of the Appellee's case here. We think that we have, even if Barton applies, we have made our prima facie case and we should be allowed to go forward, and Mr. Schwab will have the opportunity to raise his defenses. We'll have the opportunity to flesh those out through proper discovery and the other pretrial procedures, and we'll see where it ends up. Okay. Thank you very much. Thank you. Do you guys have some time for rebuttal? Yes, sir. The bankruptcy trustee is required to follow state law in certain respects. I think, Judge Fischer, you pointed out, though, that once there was a sale of less than the whole of the property and once there was a sale to a second purchaser, clearly there was notice to CGL if, in fact, it had an enforceable right, if it had standing to proceed. It relied on the bankruptcy court ruling when it acquired property to say that restriction number one didn't apply to it at all. So it now wants to be a beneficiary and not a burden with respect to this property. I don't think that that property relates to them at all. It's sort of a factual issue here. Judge McKee, you pointed out that 959A sort of changed a little bit. But in the 1980s, we've amended 959B, which would suggest to me that Congress was aware that the Barton Rule was still applicable in bankruptcy cases, even though there had been a change in who appointed the trustee. The estate issue, which is the other prong of Barton, still remains, and we believe it's still valid. Who's the suit against? The suit here threatens to undo 44 land sales of the other landowners. All of those people are going to come back against the estate and say, we didn't get what we thought we got, we got a valid court order. And so we don't think this suit's really a suit against Mr. Schwab. I know that CGL thinks it's against him in some personal capacity. We don't think so. We think it's a suit against the estate. His administration was pursuant to court orders. You don't necessarily have to he has to get authority to sell any property outside the ordinary course of business. In a Chapter 11 case, if I'm in a widget sale business, we can continue to sell widgets. I can't sell the building without a judge's approval. In a Chapter 7 case, I can't sell anything without I really have to get the judge's approval to do a lot of those kinds of sales. And so those motions are routinely filed, routinely brought. The notice is given widely. Anybody who wants to complain about it, that's the time. The Supreme Court looked at this issue two years ago in the Espinoza case. There seemed to be some failure to follow a student loan procedure, but the confirmation of the Chapter 13 plan was held to be a prior judgment, and the judgment works that way. If you don't want a judgment authorizing a sale, then that's the problem. You have to come into court and raise the issue at that time. There was sufficient notice to put the issue in play, and that's how we think that that worked. The court order per CGL's request to remove the restriction was confirmed by the court order of March 10, 2009, and the court order says the sale shall also be free and clear of Restriction 1 of the subdivision plan to allow for the sale of Lot 45. Mr. Schwab made the point to me in preparing for the argument that this is not a restrictive covenant that goes with a deed. This is a restriction in a zoning plan kind of arrangement. And so this isn't something I would have thought of at the beginning of my property law class. I would have thought of it as the end or a property law 2 class about the zoning issues that we've gotten to. So this is a very different kind of situation. I think that while CGL's attorneys may have thought that there was some effort to have to go back to state court, there was some other procedure that they were going to get into, the reality is that Mr. Schwab has started to clean up what was a mess. The economic circumstances behind this particular development project had lapsed. This was, as he said, a poor man's retirement kind of community. It was an assisted living facility. There were 44 other lots. They were rented to people who put mobile homes on them. Over time, the mobile homes got garages. They got foundations. They got a whole bunch of things so that they couldn't have been changed. The character of the property evolved to a place where people were vested in their homes. And so the character of whether this property had attached to the land and actually belonged to the bankruptcy estate or not was compromised. This is the kind of mess that bankruptcy trustees clean up. And this is the effort to get this done before Judge Thomas that Mr. Schwab was pursuing. And if he didn't do so with some precision, then the complaint is one that should have been raised in the bankruptcy court in the first instance, said you can't do this. The drivers are going to be sold sometime in March. That sale is going to be done by the bankruptcy court. It will be subject to the approval of Major League Baseball. The sale of cab companies is often subject to the approval of public service commissions. If that's a condition that needs to be there, a bankruptcy judge will recognize that and put that in part of the order. Thank you very much. Thank you.